UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **VARIETY MART, INC., d/b/a VARIETY MART 1,** ) <br> on behalf of it and all others similarly situated, ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **PAYMENT PROCESSING TECHNOLOGIES, LLC,** ) <br> **d/b/a PAYPROTEC,** ) <br> **NORTH AMERICAN BANCARD, LLC, d/b/a** ) <br> **NORTH AMERICAN BANCARD** ) <br> ) <br> **Defendants.** ) | Civil Action No. _____ |

## CLASS ACTION COMPLAINT

Now come the Plaintiffs, Variety Mart, Inc., doing business as Variety Mart 1, and all other companies or residents of the United States of America similarly situated and allege as follows:

1. Plaintiff, Variety Mart, Inc., doing business as Variety Mart 1, is a corporation formed under the laws of the State of North Carolina with its principal place of business in Granville County, North Carolina.

2. Defendant Payment Processing Technologies, LLC, doing business as PayProTec, (hereinafter referred to as PayProTec) is a company formed under the laws of the State of Indiana whose principal place of business is located at 929 E. Center Street, Warsaw, Indiana and whose registered agent is Matt Hoskins, 929 E. Center St., Warsaw, Indiana 46580.

3. Defendant North American Bancard, LLC, doing business as North American Bancard, (hereinafter referred to as North American Bancard) is a company formed under the laws of the State of Delaware whose registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

4. At all relevant times herein the Plaintiff Variety Mart, Inc., doing business as Varity Mart 1 (hereinafter referred to as Variety Mart), operated two (2) convenience stores in the State of North Carolina.

## Defendants' Business Activities

5. Defendant PayProTec is a merchant services provider that partners with and/or resells the services of North American Bancard to provide credit card processing services to merchants throughout the United States of America.

6. Defendants employ Independent Sales Organizations ("ISOs") to market its credit card processing services. ISOs are independent sales agents for financial institutions that are members of credit card associations, such as Mastercard and Visa, and they sell processing services to businesses that want to accept credit and debit card payments. They allow merchants to establish merchant accounts with a financial institution into which are deposited the proceeds of the businesses' card sales, for which the businesses pay processing fees, including a "discount rate", that is a percentage of each sale they make. These ISO's specifically target consumers who own small storefront businesses and sole proprietorships. These ISOs act as sales agents for the Defendants and are paid commissions on the sale of the Defendants' credit card services to merchants.

7. Defendants' sales agents, operating from offices in different states, typically make their first contact with merchants by making cold telephone calls, in which the sales agents claim that Defendants can save them substantial money on their credit and debit card processing. When the Defendants' sales agents initially call merchants to set up appointments, the agents either state or imply that they can lower merchants' card processing rates substantially.

8. Upon information and belief, Defendants instruct their sales agents to set up

appointments for the merchants to meet Defendants' sales agents in person at the merchants' place of business. At times, Defendants make their first contact with merchants by sending their sales agents to visit them unannounced.

9. At the visit with the merchant, the Defendants' sales agents again tell merchants that the Defendants can offer them a lower discount rate, based on the merchants' monthly volume of sales transactions made with credit and debit cards. In numerous instances, Defendants' agents tell consumers that they can "upgrade" their current processing services to get them a lower discount rate. Using billing statements from the merchants that the merchants have received from their current payment processors, the Defendants' agents compute a comparison, which compares the processing fees the merchants are currently paying with those that Defendants claim to offer. After performing this analysis, Defendants' agents promise substantial savings.

10. The sales agents of the Defendants quote a discount rate that is substantially lower than the rate the merchant is currently paying and represent that this is the only processing rate the merchants will be required to pay if they use the Defendants' services. Defendants' sales agents also quote fixed rate transaction fees that consumers will be required to pay and do not inform the merchant of any other fees or that fees may be increased or changed.

11. Defendants' sales agents ask the merchants to sign documents on the spot, which is a merchant application and contract. The contract is presented under the name PAYPROTEC, but further indicates that:

All questions regarding merchant processing should be directed to:
North American Bancard
250 Stephenson Hwy.
Troy MI 48083
1-800-BANCARD

3

12. To induce merchants to purchase credit card processing services, Defendant PayProtec also advertises its credit card processing services on its website at www.payprotec.com.

13. The Defendant PayProTec website contains a "rate" page that details transaction rates offered by the company. However, the website only displays "qualified rates" and fails to mention "mid-qualified" and "non-qualified" rates that will apply to a majority of the merchants' transactions. This type of rate quoting is deceptive and misleading to merchants and misleads merchants regarding actual rates it will pay under a PayProTec contract. This misleading rate quoting is intentional and is a pattern and practice of both Defendants PayProTec and North America Bancard.

14. Typically, merchants are forced to pay more for processing through Defendants than they were paying through their former processor and merchants do not save substantial money on their card processing. Merchants who use the Defendants' services are also charged fees in excess of the fees quoted, surcharges, as well as miscellaneous fees not disclosed to the merchants and not disclosed in the merchant application.

15. Defendants' sales agents do not inform merchants about these additional charges. They are either not disclosed or inadequately disclosed before the merchant signs up for the services.

16. Upon information and belief, the ISO's used by Defendant PayProTec are untrained and allowed to sell contracts to merchants without disclosing the actual true terms and rates. As a result, Defendant PayProTec knowingly misleads merchants regarding the actual fees charged for services and this a pattern and practice of Defendant PayProTec.

4

17. That upon information and belief, the Defendant North American Bancard is a large merchant account provider that relies heavily on independent "resellers" such as PayProTec as well as ISOs to sell its credit card processing services. Its sales agents are poorly trained on the actual terms and conditions of the contract or transaction fees and misrepresent fees in order to sign up merchants for contracts in order to receive commissions. As a result, Defendant North American Bancard knowingly misleads merchants regarding the actual fees for services and this is a pattern and practice of North American Bancard.

18. Plaintiff Variety Mart and all other similarly situated merchants in the United States of America were overcharged transactions fees for credit card processing services by these Defendants.

19. At all relevant times herein, the Defendants marketed and sold credit card processing services to merchants in the State of North Carolina and merchants in other states in the United States of American through the use of independent sales agents (ISOs) and/or resellers.

20. That at all relevant times herein, the services marketed and sold by the Defendants and its agents included credit and debit authorizations, equipment, terminals, technical support and merchant accounts so that businesses could accept all major credit cards, as well as process other forms of electronic payments from consumers.

21. That the credit card processing services such as those offered by the Defendants is a competitive business and the Defendants at all relevant times herein advertised competitive and low rates to merchants to entice them to enter into contracts for said services.

22. That the Defendants, at all relevant times herein, did enter into contracts with merchants in the State of North Carolina and other states to provide credit card processing services in exchange for rate fees per transactions processed by the merchants.

23. That this case involves the misleading and deceptive acts of the Defendants in marketing, selling and reselling credit card processing services to Plaintiffs, for breach of contract in the actual overcharging of fees and rates for said merchant services, for conversion, and injunctive relief.

## Jurisdiction, Venue and Choice of Law

24. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the purported class consists of more than 100 persons, the overall amount in controversy exceeds $5,000,000.00, exclusive of interest, costs and attorney fees, and at least one Plaintiff is a citizen of a State different from one Defendant.

25. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

- The class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical;

- There are substantial questions of law and fact common to the class including those set forth in greater particularity in Paragraph 52 herein; and

- This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

    (a) questions of law and fact enumerated below, which are all common of the class, predominate over any questions of law or fact affecting only individual members of the class;

(b) a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

(c) the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

(d) there are no unusual difficulties foreseen in the management of this class action.

26. The Defendants, collectively and individually, at all relevant times conducted substantial business in this district, many of the violations occurred in this district, and many of the acts and transactions alleged in this Complaint occurred in this district.

27. This Court has personal jurisdiction over the Defendants because each does business in this district and derives substantial revenues from its contacts with the District.

28. Venue is proper in the Eastern District of North Carolina under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 200e-5(f)(3) because a substantial portion of the complained activities herein occurred in this District, Defendants conduct and transact business in this District, and Plaintiff Variety Mart's contacts and contract with Defendants was in this District.

## Factual Allegations

29. That on or about October 25, 2012, Harold Lamptey, with Nova Merchant Services, LLC, (an ISO) acting as an agent on behalf of ProPayTec solicited Variety Mart to take over its credit card processing services by making several phone calls to the business promising to lower its credit card processing rates.

30. That on or about October 25, 2012, Harold Lamptey met with the owner/officer of Variety Mart and again promised him PayProTec could lower the rates which Variety Mart was

paying for credit processing services and provided Variety Mart with a price comparison spreadsheet to illustrate how the company could save money by transferring to PayProTec.

31. That Variety Mart agreed to enter into a contract for credit card processing services with PayProTec after multiple representations made by Mr. Lamptey of the favorable rates PayProTec could provide for the services.

32. That on or about November 10, 2012, Mr. Lamptey provided a merchant application and specific rate quotes to Variety Mart to switch its services to PayProTech.

33. That the Plaintiff Variety Mart was informed in writing that its rates for credit card processing services would be priced at three main tiers for transactions; specifically with rates of $1.15 per transaction for Tier One, $1.45 per transaction for Tier Two and $1.65 per transaction for Tier 3 and the application and contract reflected those rates.

34. That based on the representations aforementioned and the promised rates, on or about November 10, 2012, Variety Mart's owner/officer executed the merchant application aforementioned and thereby entered into a contract with the Defendants for credit card processing services. The contract was presented under the name PAYPROTEC, but further indicates that:

All questions regarding merchant processing should be directed to:
North American Bancard
250 Stephenson Hwy.
Troy, MI 48083
1-800-BANCARD

35. Upon information and belief, at all relevant times herein PayProTec was either a partner and/or reseller of credit card processing services on behalf of or in conjunction with the Defendant North American Bancard.

36. Upon information and belief, at all relevant times herein, North American Bancard provided the credit card processing services sold to Variety Mart and shared processing fees with PayProTec on the contract.

37. That following the agreement between the parties, the Plaintiff Variety Mart received "Credit Card Merchant Statements" from PayProTec regarding transactions on its account. That a review of transactions from November, 2012 to October, 2013 revealed that the Plaintiff Variety Mart had been charged rates well in excess of the rates quoted and agreed on in the initial contract. That Variety Mart was overcharged transaction rates of $2.40, $2.50, $2.55, $2.60, $2.65, $2.80 on multiple transactions, all in direct contravention of the rate quotes provided in the initial contract.

38. At no point in time was Variety Mart informed by Defendants or its agents that rates for transactions were not fixed or may change under the contract or informed or given notice of any increase in rates over the term of the contract. That the merchant application with rates quotes was the only terms provided to Variety Mart by Defendants.

39. That the Defendants have engaged in a common scheme to entice merchants to agree to credit card processing services by marketing low rates for transactions, but mislead the merchants regarding the actual amounts being charged for different types of transactions and in fact overcharge merchants for transactions.

40. That the Defendants advertise and promote "qualified" rates to merchants without revealing that most transactions do not fit into qualified rates and also fail to notify merchants of other rates it will be charged. That Defendants also unilaterally charged higher rates on transactions than those promised without notice to merchants.

9

41. That this Complaint alleges causes of actions for (a) breach of contract, (b) conversion and (c) an injunction against the Defendants. That the unfair, deceptive and wrongful acts were committed by Defendants during the advertising, soliciting, selling and processing of credit card transactions of Variety Mart and other merchants similarly situated in the United States of America. That the Defendants' actions in presenting a contract for credit card processing services with specified rates in writing, then charging higher rates once the merchant entered into the contract constitutes breach of contract and conversion. Further, that due to the actions of the Defendants as described herein, the Plaintiff and the putative class are entitled to injunctive relief.

## Common Enterprise

42. Defendants have operated a common enterprise while engaging in deceptive acts and practices as alleged herein. They have further acted in an interrelated network of companies and have common ownership, managers, employees, and office locations and have commingled funds. Because these Defendants have operated a common enterprise, each of them is jointly and severally liable for the acts and practices herein.

43. Further, the Defendants acted in conspiracy and in concert with each other in connection with the claims alleged herein and are thereby jointly and severally liable for the wrongful conduct alleged herein.

44. This case seeks compensatory, as well as injunctive and other relief, attorneys' fees and costs, interest, and other damages.

## Class Allegations

45. Plaintiff, Variety Mart, brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of it and as representative of a Class of businesses or

residents of the United States of America who entered into agreements with PayProTec and North America Bancard for credit card processing services.

46. Plaintiff Variety Mart brings this action as class representative to recover damages and/or refunds from these Defendants for breach of contract and conversion.

47. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a)(1-4) and (b)(1).

48. The Plaintiff Class is defined and proposed as follows:

All merchants in the United States of America who entered into a contract with PayProTec and/or North America Bancard for credit card processing services and were overcharged credit and debit card transaction rates over and above quoted rates. Collectively, these merchants will be referred to as "the Class."

49. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

50. Excluded from the Plaintiff Class are:

    (a) Defendants and any entities in which any Defendant has a controlling interest;

    (b) Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of any Defendant;

    (c) The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer or employees assigned to this case;

(d) Any attorneys representing the Plaintiff or the Class;

(e) All governmental entities; and

(f) Any person having entered into a release of claims with the Defendants concerning these allegations prior to the certification of this class.

51. Numerosity – Fed. R. Civ. P. 23(a)(1). The Class Members are so numerous that their individual joinder is impracticable. The exact number or identification of the Class Members is presently unknown, but it is believed that there are over 100 and most likely thousands of Class Members. The identity of the Class Members is ascertainable. In addition to credit card merchant account statements maintained by the Defendants, the Class Members may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means.

52. Predominance of Common Questions – Fed. R. Civ. P. 23(a)(2), 23(b)(3). Common questions of law and fact exist as to all the Class Members and predominate over questions affecting only individual Class Members. These common questions include the following:

(a) Whether Defendants misled merchants regarding the fees associated with transactions for credit card processing services;

(b) Whether Defendants, by and through their agents concealed material facts from merchants regarding the terms of the card processing contracts and/or the fees that would be charged before merchants applied for services and equipment to process credit and debit card payments.

(c) Whether Defendants breached credit card processing contracts by charging fees in excess of those rate quotes made in the actual contracts;

12

(d) Whether the Defendants wrongfully converted funds of Plaintiffs for its own use;

(e) Whether Plaintiff and the Class Members suffered any damages that was proximately caused by the unlawful acts alleged herein; and

(f) Whether Plaintiff and the Class Members are entitled to recover damages proximately caused by the alleged unlawful conduct, including actual damages of overcharged transactions fees, damages, interest, attorneys' fees, filing fees, and reasonable costs of suit.

53. Typicality – Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of claims of all of the Members of the Class, all of whom entered into agreements for credit card processing services with Defendants.

54. Adequacy – Fed. R. Civ. P. 23(a)(4); 23(g)(1). Plaintiff is an adequate representative of the Class because it fits within the class definition and its interests do not conflict with the interests of the Members of the Class it seeks to represent. Plaintiff will prosecute this action vigorously for the benefit of the entire Class, it agrees to participate in discovery and attend any Court hearings required of it. Plaintiff is represented by experienced and able attorneys from coordinated law firms that will collectively and jointly serve as Class Counsel. Class Counsel has litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class. Plaintiff and Class Counsel can fairly and adequately protect the interests of all of the Members of the Class.

55. Superiority – Fed. R. Civ. P. 23(b)(3). The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Further, individual litigation has the potential to result in inconsistent or

contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. The class, as defined herein, is ascertainable from the Defendants' records or from records which the Defendants have access and control.

56. Plaintiff Variety Mart and all similarly situated merchants in the United States of America were overcharged transactions fees for credit card processing fees by these Defendants.

57. Therefore, Plaintiff Variety Mart and all other similarly situated merchants in the United States of America which were overcharged fees by these Defendants were proximately damaged by the actions of these Defendants.

## COUNT ONE

### Breach of Contract

Plaintiff, on behalf of itself and all other similarly situated merchants in the United States of America, incorporates herein by reference and re-alleges paragraphs one (1) through fifty-seven (57) of this Complaint, all as if set forth fully herein and further alleges:

58. The contract entered into by Plaintiff and others similarly situated with Defendants contained rate quotes for credit card transactions processed by merchants.

59. That the Defendants charged transactions fees and rates higher than those agreed to and contained in the contracts entered into by Plaintiff Variety Mart and others similarly situated.

60. That the charging of fees and rates higher than those agreed to and set forth in the contracts was a breach of those contracts and each of them.

61. That the provisions regarding fees and rates were material terms of the contracts for the credit card processing services.

62. That the breaches of the credit card processing contracts were material and substantial and proximately caused substantial monetary damages to Variety Mart and other similarly situated merchants in the United States of America.

## COUNT TWO

### Conversion

Plaintiff, on behalf of itself and all other similarly situated merchants in the United States of America, incorporate herein by reference and realleges paragraphs one (1) through sixty-two (62) of the Complaint, all as if set forth more fully herein and further allege:

63. The Plaintiffs had the ownership or right of possession of the money it collected regarding merchant transactions in its business.

64. That the Defendants' wrongful act of overcharging credit and debit card transactions fees and taking money not owed to Defendants was inconsistent with the property rights of the Plaintiffs.

65. That the Defendants took possession of money that was the property of the Plaintiffs, thereby wrongfully depriving the true owners, the Plaintiffs, from their property.

66. That the Defendants' wrongfully converted the Plaintiffs money to itself.

67. That as a direct and proximate cause of the conversion by the Defendants, the Plaintiffs have been damaged and have lost money from the overcharging of fees on the credit and debit card transactions.

## COUNT THREE

### Injunction

Plaintiff, on behalf of itself and all other similarly situated merchants in the United States of America, incorporate herein by reference and realleges paragraphs one (1) through sixty-seven (67) of the Complaint, all as if set forth more fully herein and further allege:

68. Defendants' acts, omissions, and course of conduct, in dealing with Plaintiff and all Class Members, is unequitable and unjust.

69. The Court, in the exercise of equitable jurisdiction, may grant injunctive and other such relief as the Court may deem appropriate to halt and redress further violations of the law by the Defendants.

70. That there is a likelihood of irreparable harm to merchants with no adequate remedy by law if the scheme is allowed to be continued.

71. That the balance of the harm favors the movant and there is a likelihood of success on the merits.

72. That the public interest favors the granting of an injunction.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all Class Members, demands judgment against Defendants as follows:

(a) An order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and his attorneys as Class Counsel to represent the Class Members;

(b) An order entering judgment in favor of Plaintiff Variety Mart and the Class Members against Defendants for breach of contract and conversion;

(c) An order awarding damages against Defendants in favor of Plaintiff and Class Members in an amount to be determined by the Court as fair and just given Defendants' wrongful conduct;

(d) Injunctive relief or an order of non-monetary relief as the Court may deem proper; and

(e) An order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses, including costs of experts and of suit.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class Members hereby demand a jury trial on all claims so triable in this action.

VARIETY MART, LLC,

By Counsel,

    /s/ Aaron C. Hemmings
Aaron C. Hemmings, (NC State Bar No. 29810)
Kelly A. Stevens, (NC State Bar No. 27066)
*Attorneys for Plaintiff*
Hemmings & Stevens, P.L.L.C.
5613 Duraleigh Road, Suite 151
PO Box 90698
Raleigh, NC 27675
Telephone:    919-277-0161
Fax:    919-277-0162
ahemmings@hemmingsandstevens.com

      /s/ Joseph H. Aughtman
Joseph "Jay" H. Aughtman (AL State Bar No. ASB-8081-A43J)
*Attorney for Plaintiff, Pro Hac Vice to be filed*
Aughtman Law Firm, LLC
1772 Platt Place
Montgomery, AL 36117
Telephone:    334-215-9873
Facsimile:    334-213-5663
jay@aughtmanlaw.com

18

Case 5:14-cv-00130-D   Document 1   Filed 03/06/14   Page 18 of 18